UNITED STATES BANKRUPTCY COURT
DISTRICT OF ALASKA

| | |
|---|---|
| In re:<br><br>ANDREW CASTRO PONGCO,<br><br>       Debtor(s). | Case No. 09-00026-GS<br><br>Chapter 13 |
| ANDREW CASTRO PONGCO,<br><br>       Plaintiff(s),<br><br>    v.<br><br>BETSY DEVOS, SECRETARY, U.S. DEPARTMENT OF EDUCATION; NAVIENT LLC; PIONEER CREDIT RECOVERY, INC.; JOHN DOES 1 AND 2,<br><br>       Defendant(s). | Adv. No. 18-90002-GS |

**ORDER DENYING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

Debtor and plaintiff Andrew Castro Pongco (Pongco) filed his motion for summary judgment (Adv. ECF No. 20) that proof of claim 7-1 filed by Sallie Mae, predecessor to defendant Navient Solutions, LLC (Navient), was discharged upon the completion of his chapter 13 plan. Navient filed its Response to Plaintiff's Motion for Partial Summary Judgment, and Cross-Motion for Summary Judgment (Cross-Motion)(Adv. ECF No. 28). The court heard oral argument on Pongco's motion for summary judgment and the Cross-Motion on March 27, 2019. Appearances were as noted on the record.

Pongco's chapter 13 plan provided that his student loans would be discharged upon plan completion, though not paid in full. Navient, then known as Sallie Mae, did not object to the discharge of its student loan debts.[1] At oral argument on the cross motions, the court concluded that material questions of fact exist as to whether Sallie Mae received the chapter 13 plan and

---

[1] Because the operative actions took place when the creditor was known as Sallie Mae, the court refers to the creditor as Sallie Mae rather than Navient throughout the remainder of this order to avoid confusion.

knew of its terms. Accordingly, the court has denied Pongco's motion for summary judgment. (Adv. ECF No. 36). The court took the Cross-Motion under advisement after oral argument. For the reasons stated below, this court will deny the Cross-Motion.

A.   **BACKGROUND**

    1.   <u>The Bankruptcy Case</u>

Pongco filed his chapter 13 bankruptcy on January 22, 2009. Included among Pongco's scheduled creditors were Sallie Mae and Wells Fargo, both listed with claims based upon Pongco's student loans. Pongco included two different addresses for Sallie Mae in his creditor mailing matrix:

| | |
|---|---|
| Sallie Mae<br>P.O. Box 9500<br>Wilkes Barre, PA 18773-9500 | Sallie Mae<br>John Hewes, Exec. V.P.<br>12061 Bluemont Way<br>The Plains, VA 20198 |

Pongco also included two different addresses for Wells Fargo in the mailing matrix:

| | |
|---|---|
| Wells Fargo<br>P.O. Box 5185<br>Sioux Falls, SD 57117-5185 | Wells Fargo<br>Michael J. Loughlin, Exec. V.P.<br>420 Montgomery Street<br>San Francisco, CA 94163 |

The court's Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines (ECF No. 10) (Notice of Bankruptcy) was sent to Sallie Mae at both addresses by the Bankruptcy Noticing Center (BNC) (ECF No. 15). The Notice of Bankruptcy provided, among other things, that proofs of claim were due to be filed no later than May 19, 2009.

Also on January 22, 2009, Pongco filed his proposed chapter 13 plan (ECF No. 4) (Plan). Paragraph 2(h) provided that Attachment A to the plan contained the terms of treatment for Pongco's student loan creditors. Attachment A bore the title "<u>PLEASE TAKE NOTICE FOR IMPORTANT TREATMENT OF STUDENT LOAN CLAIMANTS</u>," and provided that the

2

balances remaining on Pongco's student loan debts, if any, would be discharged upon completion of the Plan and entry of discharge.  It further provided that, "Assuming the student loan creditor does not file an objection to the plan, the foregoing will be binding upon the allowed claimant."  ECF No. 4 at p. 8.  Sallie Mae and Wells Fargo were listed among the student loan creditors whose claims would be discharged absent objection.

On February 3, 2009, the court entered its Order Setting Chapter 13 Confirmation Hearing and Requiring Notice (ECF No. 16) (Order Requiring Notice).  In the Order Requiring Notice, the court directed Pongco's attorney to "serve the matrix with the Chapter 13 plan, and a Notice of Hearing on Confirmation of Chapter 13 Plan and Time to File Written Objections using AK LBF 6A."  ECF No. 16.  The Order Requiring Notice was served only on Pongco's counsel, the chapter 13 trustee and the United States Trustee.

On February 5, 2009, Pongco filed the Notice of Hearing on Confirmation of Chapter 13 Plan and Time to File Written Objections (ECF No. 17) (Confirmation Notice).  The second paragraph of the Confirmation Notice read: "Notice is given that the debtor(s) has(have) filed the enclosed plan..." ECF No. 17 at p. 1.  A copy of the Plan was attached to the Confirmation Notice filed at ECF No. 17, including Attachment A.

Also on February 5, 2009, Pongco filed his Certificate of Mailing (ECF No. 18) signed by Margaret Murphy of Mr. Johansen's office regarding service of the Confirmation Notice.  In the Certificate of Mailing, Ms. Murphy stated that she mailed the Confirmation Notice, first class, "to each of the names and addresses set forth in the matrix."  ECF No. 18 at p. 1.  The mailing matrix attached to the Certificate of Mailing included the addresses for Sallie Mae as set forth above.  However, a copy of the Confirmation Notice was not attached to the Certificate of Mailing.

3

On February 19, 2009, Wells Fargo Bank, N.A., through Sallie Mae Guaranty Services, filed Proofs of Claim Nos. 3-1 and 4-1, in the amounts of $36,032.61 and $30,539.05, respectively.  The basis for these proofs of claim was listed as "money loaned," and the documentation attached to those proofs of claim demonstrated that the loans were federal Stafford educational loans.  The address for notices listed on the proofs of claim was P.O. Box 9340, Wilkes-Barre, PA 18773.  Pongco had previously sent the notices and mailings to: P.O. Box *9500*, Wilkes Barre, PA 18773-9500.

Two student loan creditors listed on Attachment A filed objections to the Plan: the Alaska Commission on Postsecondary Education (ECF No. 20) and the University of Hawai'i (ECF No. 22).  Both creditors objected to the discharge of their loans as proposed under the Plan.  The University of Hawai'i also filed a Notice of Change of Address (ECF No. 23), noting that future notices in Pongco's bankruptcy case should be sent directly to the university and not to its servicer, Campus Partners.

Pongco's Plan was confirmed at the hearing held on March 24, 2009.  At paragraph 2, the Order Confirming Chapter 13 Plan (ECF No. 27) (Confirmation Order) provided that "Debts owed to the University of Hawaii [sic] and the Alaska Commission on Postsecondary Education will not be discharged even if the debtor successfully completes his plan.  The debtor must bring an appropriate adversary action to obtain a hardship discharge."  The Confirmation Order also contained language stating the Plan was "transmitted to creditors in accordance with Bankruptcy Rule 3015."  ECF No. 27 at p. 1.

Post-confirmation, on April 23, 2009, Sallie Mae Education Credit Finance Corp., through Sallie Mae, Inc., timely filed Proof of Claim No. 7-1 in the amount of $9,768.15.  The

4

basis for the proof of claim was listed as "money loaned." The address for notices listed on the proof of claim was 220 Lasley Ave., Wilkes-Barre, PA 18706.

On May 9, 2014, the chapter 13 trustee filed his Final Report and Account (ECF No. 37) (Final Report) and his Notice of Intent to Enter Discharge if There Are No Objections (ECF No. 38) (Discharge Notice). According to the Certificate of Service attached to the Final Report, only Pongco, Mr. Johansen and the United States Trustee were served with the Final Report.[2] The trustee served the Discharge Notice on Debtor's mailing matrix. No objections to the Discharge Notice were filed, and the court entered the Order Discharging Debtor (ECF No. 39) (Discharge Order) on June 12, 2014. The Discharge Order was served on the mailing matrix via BNC noticing (ECF No. 40).

2.   The Adversary Proceeding

On March 26, 2018, Pongco filed his complaint alleging that Sallie Mae and others violated the discharge injunction. Pongco amended the complaint the next day. (Adv. ECF No. 2). In the amended complaint, Pongco contends that Sallie Mae and others garnished his wages post-discharge to satisfy the student loan debts. Pongco argues that the balances on Sallie Mae's student loans were discharged per the terms of the Plan. Pongco seeks a judgment that Sallie Mae willfully violated the discharge injunction under § 524, and requests that the court enjoin Sallie Mae from any further collection action on its discharged debt. Pongco further asks that Sallie Mae be held in contempt under § 105, and ordered to provide an accounting of the monies seized post-discharge. Finally, Pongco seeks an award of attorney's fees and costs.

---

[2] The Final Report was sent to the Alaska Commission on Postsecondary Education through ECF as well.

5

Pongco filed his Motion for Partial Summary Judgment on December 6, 2018 (Adv. ECF No. 20)(Debtor MSJ).  Relying on *United Student Aid Funds v. Espinosa*, 559 U.S. 260 (2010), Pongco requested a determination that Sallie Mae's Proof of Claim No. 7-1 was discharged pursuant to his confirmed Plan.  Pongco further argued that Navient was bound by the Confirmation Order because Sallie Mae received notice of the Plan and did not timely object to, or appeal, the Confirmation Order.

Sallie Mae opposed the Debtor MSJ, and cross moved for summary judgment.  In its Cross-Motion, Sallie Mae conceded that it actually received the Notice of Bankruptcy on January 28, 2009.  Sallie Mae does not state from which address it received the Notice of Bankruptcy.  Petra Shipman, a litigation analyst in Sallie Mae's Bankruptcy Litigation Unit, provided affidavits in support of the Cross-Motion.  Ms. Shipman stated that Sallie Mae had no office in The Plains, Virginia, one of the addresses Pongco used in his mailing matrix.  Ms. Shipman notes that Sallie Mae does have an office at a similar street address in Reston, Virginia.[3]  Ms. Shipman's affidavits do not address the post office box listed as an alternative address for Sallie Mae for the mailing.  At oral argument, however, Sallie Mae's attorney conceded that the post office box listed in the mailing matrix is a corporate address, though it is used for receipt of general correspondence.

Sallie Mae also admitted that it actually received the Discharge Notice, though again it does not say how.  Unlike the Bankruptcy Notice, the Discharge Notice was sent not only to the original addresses listed by Pongco on the mailing matrix but also those addresses for notices listed on Wells Fargo's and Sallie Mae's proofs of claim.

---

[3] Specifically, Sallie Mae asserts that Sallie Mae's location at 12061 Bluemont Way is in Reston, VA 20190, not "The Plains, VA 20198" as provided by Debtor.  Similarly, as to Wells Fargo, Sallie Mae notes that the correct zip code for the address in San Francisco is 94104, not 94163.

Though it received the Notice of Bankruptcy and the Discharge Notice, Sallie Mae says that it never received a copy of the Plan. Moreover, Sallie Mae points out that Pongco's Certificate of Mailing only referenced service of the Confirmation Notice. From this, it argues that Pongco may never have mailed the Plan to any creditor.

Sallie Mae further argues that because the student loan discharge provisions contained in the Plan purported to "discharge by declaration" otherwise nondischargeable student loan debt, service of the Plan should have complied with Fed. R. Bankr. P. 7004(b)(3) and (h). It concludes that Pongco's failure to properly serve Sallie Mae and Wells Fargo to the attention of an officer, or via certified mail in the case of Wells Fargo, mandates a finding that Sallie Mae did not receive due process and thus the reasoning of the Supreme Court in *Espinosa* should not apply.

Sallie Mae also maintains that Debtor's proposal of the Plan with its provisions regarding discharge of educational loan debt was a bad faith action that warrants an equitable ruling in Sallie Mae's favor, and mandates a finding that Sallie Mae's student loans were not discharged.

Finally, Sallie Mae contends that sanctions under § 105 for violation of the discharge injunction are improper because Sallie Mae "believed in good faith that the loans were not discharged through Debtor's [Plan]." Adv. ECF No. 28 at p. 15:6-7. In support of its final argument Sallie Mae cited *Lorenzen v. Taggart (In re Taggart)*, 888 F.3d 438, 444 (9th Cir. 2018), *cert. granted*, 139 S.Ct. 782 (2019), and *ZiLOG, Inc. v. Corning (In re ZiLOG)*, 450 F.3d 996, 1007 (9th Cir. 2006).

In his opposition to the Cross-Motion (Adv. ECF No. 30), Pongco did not specifically contest that Sallie Mae should have been served with the Plan pursuant to Fed. R. Bankr. P. 7004(b)(3) and (h). Rather, he contends that Sallie Mae had actual notice of the Plan and his proposed treatment of its student loan. Again relying on *Espinosa*, he argues that any deficiency

7

in service does not constitute a violation of Sallie Mae's due process rights, because both Sallie Mae and Wells Fargo knew of the bankruptcy case, as evidenced by the filing of their proofs of claim. Pongco also challenged the sufficiency of the evidence supporting Sallie Mae's allegation that it did not receive the Plan. Finally, Pongco argued that Sallie Mae's current request for a nondischargeable judgment was unsupported by any authority and did not comply with the requirements for seeking sanctions under Fed. R. Bankr. P. 9011. Pongco's opposition did not, however, specifically respond to Sallie Mae's arguments regarding sanctions under § 105 for violation of the discharge injunction.

On reply, Sallie Mae pointed out that Pongco appeared to concede he had not served the Plan in accordance with Fed. R. Bankr. P. 7004, reiterating that such service was required because the Plan proposed to affect Sallie Mae's rights directly (Adv. ECF No. 33). Sallie Mae also provided a supplemental declaration providing additional details regarding the qualifications of the declarant, Ms. Shipman, to testify as to Sallie Mae's non-receipt of the Plan. It further disagreed with Pongco's interpretation of *Espinosa*, distinguishing that case from the current dispute by noting that the creditor in *Espinosa* received actual notice of the filing and contents of the debtor's chapter 13 plan. Finally, Sallie Mae again encouraged the court to find that the equities of the case supported a finding that its debts had not been discharged, since the Supreme Court in *Espinosa* discouraged debtors from attempting to discharge student loan debt without satisfying the requirements of §§ 523(a)(8) and 1328(a)(2).

**B.    ANALYSIS**

      1.    <u>A Genuine Issue of Material Fact Exists as to Whether Sallie Mae Was Deprived of Due Process</u>

The primary dispute in this matter centers on whether the Plan binds Sallie Mae. If so, *Espinosa* establishes that the Plan's discharge of Sallie Mae's student loans is enforceable despite the statutory provisions to the contrary found in § 523(a)(8). *See United States v. Monahan (In re Monahan)*, 497 B.R. 642, 651 (1st Cir. BAP 2013) ("*Espinosa* stands for the limited proposition that a confirmed plan is binding on all parties-in-interest, provided the plan proponent afforded such parties adequate notice, consistent with the Due Process Clause of the United States Constitution—even if the plan violates the Bankruptcy Code in some particulars."). Because the Plan sought to discharge Sallie Mae's otherwise nondischargeable debt, Pongco was required to serve Sallie Mae under Rule 7004(b)(3) and Wells Fargo under Rule 7004(h).[4]

Pongco acknowledges that it did not serve either Sallie Mae or Wells Fargo as required under Rule 7004. Instead, it contends Sallie Mae received the Plan, and it is bound by its actual knowledge. *See Espinosa*, 559 U.S. at 272 ("Here, United received *actual* notice of the filing and contents of Espinosa's plan. This more than satisfied United's due process rights.") [emphasis in original]; *see also Beneficial California, Inc. v. Villar (In re Villar)*, 317 B.R. 88, 94 (B.A.P. 9th Cir. 2004)(quoting *Wallace v. Shapiro (In re Shapiro)*, 265 B.R. 373, 378 (Bankr.

---

[4] Sallie Mae makes much of language in the Order Requiring Notice, directing Pongco to "serve" creditors with the Plan and Confirmation Notice. However, the Order Requiring Notice is titled, "Order Setting Chapter 13 Confirmation Hearing and Requiring *Notice*" [emphasis added], not "Requiring *Service*." The court is not inclined to give weight to Sallie Mae's arguments regarding the court's intent in issuing that order. The mailing requirements for a chapter 13 plan are set out in Rule 2002(b). A debtor need not "serve" the plan under Rule 7004 on every party in interest. In this instance, it was the specific actions directed against the loan creditors that created, at the minimum, the need for service under Rule 7004. As recognized in *Espinosa*, any effort to render a student loan nondischargeable required an adversary action, which invokes the service requirements of Rule 7004. Moreover, service under Rule 7004 is required for any contested matter not otherwise governed by the Rules. Rule 9014(a). Pongco was not able to avoid the substantive requirements of service otherwise required to except his student loans from the provisions of § 523(a)(8) by simply appending them to the chapter 13 plan. *Espinosa*, 559 U.S. at 272. ("[The debtor's] failure to serve [its student loan lender] with a summons and complaint deprived [the lender] of a right granted by a procedural rule. See Fed. Rule [Bankr.] Proc. 7004(b)(3).").

9

E.D.N.Y. 2001)) ("'[T]he standards for service on individuals and corporations are to be liberally construed to further the purpose of finding personal jurisdiction in cases in which the party has received *actual notice*.")(emphasis in original); *Nationstar Mortgage, LLC v. Iliceto (In re Iliceto)*, 706 Fed.Appx. 636, 641-644 (11th Cir. 2017) (debtor's noncompliance with Fed. R. Bankr. P. 3007 did not violate creditor's due process rights where creditor had actual notice of court's disallowance of its proof of claim).  Sallie Mae contends it never received the Plan, and, therefore, cannot be charged with actual notice.

For much the same reason that the court denied Pongo's motion for summary judgment, the court finds that a genuine dispute concerning Sallie Mae's receipt and knowledge of the Plan precludes summary judgment here.  Sallie Mae contends that it did not receive the Plan or the Confirmation Notice because those documents were sent to incorrect addresses for both Sallie Mae and Wells Fargo.  But Sallie Mae only challenges the accuracy of one address for Sallie Mae, and one address for Wells Fargo.  Pongco sent the Plan and the Confirmation Notice to two addresses each for both Sallie Mae and Wells Fargo.  Sallie Mae does not challenge the accuracy of the other addresses for Sallie Mae and Wells Fargo where Pongco sent the Confirmation Notice.

Pongco mailed the Notice of Bankruptcy on January 25, 2009 (ECF No. 15).  Sallie Mae admits that it received the Notice of Bankruptcy on January 28, 2009.  There is a reasonable inference that Sallie Mae received the Notice of Bankruptcy at the general mailing post office box in Wilkes-Barre, Pennsylvania.[5]  Pongco then mailed the Confirmation Notice, which

---

[5] On summary judgment, all facts genuinely in dispute must be viewed, and all reasonable inferences must be made, "in the light most favorable to the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

10

included the Plan, to Sallie Mae at the same general post office box only eleven days after the first mailing.

Sallie Mae flatly denies having ever received the Confirmation Notice. But Sallie Mae had actual knowledge of the bankruptcy from the Notice of Bankruptcy. Sallie Mae and Wells Fargo proceeded to file claims, and Sallie Mae received the Notice of Intent. Given the addresses Pongco used, Sallie Mae's receipt and knowledge of the Notice of Bankruptcy and the Notice of Intent strongly suggests that documents mailed to its general post office box were sufficient to provide actual notice of the bankruptcy matters. Moreover, the mailbox rule provides that proof of mailing creates a rebuttable presumption of receipt. *Diepholz v. Zahlmann (In re Diepholz)*, 2012 WL 4747238 (B.A.P. 9th Cir. Oct. 4, 2012). Pongco, therefore, can establish Sallie Mae's receipt of the Confirmation Notice. While Sallie Mae argues that the Plan was not included in the Confirmation Notice, the Certificate of Mailing references that a copy of the Confirmation Notice was mailed to Pongco's creditors, and the Confirmation Notice included a copy of the Plan. Again, the court must construe the inferences in favor of the nonmovant, and it is a fair inference from this reference that a copy of the Plan was mailed as part of the Confirmation Notice.

Importantly, these mailings do not resolve the issue of whether Sallie Mae had *knowledge* of the Plan. There appears to be a wide divide between the presumption that Sallie Mae received a mailing at a general address and its actual knowledge of the Plan. As seen in *Espinosa*, Pongco may prevail despite failing to properly serve the Confirmation Notice, but only if he can prove that Sallie Mae had actual knowledge of the proposed plan and confirmation hearing. For purposes of the Cross-Motion, the court must deny summary judgment as the mailings both prior and subsequent to the Confirmation Notice that provided Sallie Mae with actual knowledge of

11

other bankruptcy matters supports an inference, when construed in Pongco's favor, that Sallie Mae had actual knowledge of the Plan (by receipt of the Confirmation Notice). Therefore, this very material issue remains subject to a genuine dispute.

        2.      <u>Whether Sallie Mae Knowingly Violated the Discharge Injunction.</u>

Sallie Mae's request for summary judgment on Pongco's claim for violation of the discharge injunction is similarly tied to whether Sallie Mae had knowledge of the Plan. The Ninth Circuit has "adopted a two-part test for determining the propriety of a contempt sanction in the context of a discharge injunction: '[T]o justify sanctions, the movant must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction.'" *Taggart*, 888 F.3d at 443 (quoting *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002)). The debtor must prove the contempt by clear and convincing evidence. *Bennett*, 298 F.3d at 1069. The movant must also prove that the creditor knew that the discharge injunction applied to the challenged action "as a matter of fact and may not be inferred simply because the creditor knew of the bankruptcy proceeding." *Taggart*, 888 F.3d at 444 [internal citations omitted]. In *Taggart,* the Ninth Circuit explained that "the creditor's good faith belief that the discharge injunction does not apply to the creditor's claim precludes a finding of contempt, even if the creditor's belief is unreasonable."[6] *Id.* (citing *ZiLOG*, 450 F.3d at 1009, n.14).

Sallie Mae notes that Pongco did not address this aspect of its motion for summary judgment. However, even where there is no opposition, the movant is still required to show that there is no genuine issue of material fact. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir.

---

[6] The Supreme Court recently heard oral argument in *Taggart* regarding the specific knowledge required to support contempt for a discharge violation.

1993)("A local rule that requires the entry of summary judgment simply because no papers opposing the motion are filed or served, and without regard to whether genuine issues of material fact exist, would be inconsistent with Rule 56, hence impermissible under Rule 83.").

The court appreciates that Pongco must prove the contempt by clear and convincing evidence. But based upon the above analysis the court cannot say that there is no genuine dispute of fact as to Sallie Mae's knowledge of the plan and discharge. If Sallie Mae had actual knowledge of the Plan and knew that the Plan discharged the student loans, then construing those facts in Pongco's favor as the nonmovant, Sallie Mae's post-discharge collection efforts may well have violated the discharge injunction. Because Sallie Mae's knowledge of the applicability of the discharge injunction to its loans necessarily follows its knowledge of the Plan, genuine issues concerning these facts remain, precluding summary judgment.

       3.      <u>Sallie Mae's Request for Nondischargeable Award/Ruling on the Equities</u>

In the Cross-Motion, Sallie Mae requested, in the alternative, a "sanction in the form of a nondischargeable judgment, in an amount equal to that of any discharged debt, payable to the holders of any discharged claims..." Adv. ECF No. 28 at p. 13:26-28. Subsequently, at the March 27, 2019 hearing, counsel for Sallie Mae clarified that it was not seeking an award of sanctions against Pongco. Sallie Mae did not, however, withdraw its argument that "the equities favor a finding that the debts at issue have not been discharged." *Id.* at p. 13:24. Its basis for that argument is an allegation that Pongco engaged in "'bad faith litigation tactics,' having essentially attempted to trick the holders of student loan debts into discharging their otherwise nondischargeable obligations." *Id.* at p. 13:22-23. This appears to be a collateral attack on the confirmed Plan. Sallie Mae has not explained the basis for such relief - particularly within a cross-motion for summary judgment. Nor has it provided any evidence demonstrating that

13

Pongco proposed his Plan in bad faith. Accordingly, Sallie Mae has not established the basis for summary judgment as to this request.

**C.    CONCLUSION**

For the reasons set forth above, Navient's Cross-Motion for Summary Judgment (Adv. ECF No. 28) is DENIED.

DATED:  May 15, 2019

                                                   BY THE COURT
                                                   /s/ Gary Spraker
                                                 GARY SPRAKER
                                                 United States Bankruptcy Judge

Serve:  C. Johansen, Esq.
         R. Ullstrom, Esq.
         Case Manager
         ECF Participants via NEF